**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

Dated: March 14 2012

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 10-37007 |
| | ) | |
| Anthony R. Grabarczyk and | ) | Chapter 13 |
| Bethany A. Grabarczyk, | ) | |
| | ) | |
| Debtors. | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION AND ORDER
### DENYING CONFIRMATION OF AMENDED CHAPTER 13 PLAN

This case came before the court for hearing on confirmation of Debtors' proposed Amended Chapter 13 Plan [Doc. # 83]. Debtors, their attorney, and counsel for the Chapter 13 Trustee appeared in person. At the hearing, the Chapter 13 Trustee orally objected to confirmation, arguing that the Amended Plan does not meet the disposable income test of 11 U.S.C. § 1325(b)(1)(B). For the reasons that follow, the court agrees. The court will, therefore, sustain the Trustee's objection and deny confirmation of the Amended Plan.

### BACKGROUND

The following facts are not in dispute. Debtors filed a joint petition for relief under Chapter 7 of the Bankruptcy Code on October 13, 2010. Their motion to convert to a Chapter 13 case was granted on March 16, 2011. Debtors' bankruptcy schedules filed after conversion show assets that include real property located at 2416 Portsmouth, Toledo, Ohio, owned jointly by Debtors and that is subject to a mortgage in

excess of the stated value of the property, and rental property located at 3417 Downing, Toledo, Ohio, owned by Anthony Grabarczyk, together with two other partners. Relief from stay has been granted as to the Portsmouth property, Debtors' mortgage has been foreclosed and the property has been sold. [Doc. # 56, Schedule A, p. 3/37]. The Downing property is subject to a mortgage for which Anthony Grabarczyk is jointly and severally liable.

Debtors' schedules also show assets that include, among other things, a 2007 Chevy Silverado, a John Deere tractor that Debtors have since surrendered, and a 2008 Saturn Aura, which was a leased vehicle that Debtors have surrendered after expiration of the lease term. [*Id.*, Schedule B, p. 6/37]. After surrendering the Saturn, Debtors purchased a ten-year-old vehicle that they own free and clear of any lien.

Debtors' Schedule I shows gross monthly wages in the amount of $10,354, income from real property in the amount of $82, and payroll deductions that include monthly payroll taxes and social security withholdings in the total amount $2,550. [*Id.*, p. 20/37]. Their Schedule J includes a tax expense of $40, which represents an annual shortfall on income taxes withheld from Debtors' wages, and 401(k) plan loan payments of $731, which represents the total monthly payment on four separate loans, each of which will be paid off at different times during the term of the proposed Amended Plan. Their Schedule J does not include a mortgage expense for the Downing rental property and they indicate that the rent collected on the rental property covers the monthly mortgage payment due. [*See id.*, pp. 20, 22-23/37].

Debtors filed their Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income on Official Form B22C, also known as the means test. Part I of Form B22C reflects a debtor's average income during the six calendar months before filing the bankruptcy petition. Debtors report total monthly income of $11,069, which includes net rental income from the Downing property of $80. [Doc. # 65]. Because their income is above the applicable median income for a household the size of Debtors' in Ohio, as set forth in Part II, they were also required to complete Part III of the form, which includes a calculation of deductions from income that are allowed under 11 U.S.C. § 707(b)(2).

Debtors deduct from their income on Form B22C total expenses in the amount of $11,287.72, resulting in monthly disposable income shown on line 59 of a negative $218.72. Their deductions include vehicle operation expense deductions on line 27A for two vehicles in the amount of $420, a vehicle ownership/lease expense deduction on line 28 in the amount of $168.31 ($496 IRS Local Standard less secured debt payment of $327 on the Chevy Silverado), and an ownership/lease expense deduction on line

29 for a second vehicle in the amount of $229 ($496 IRS Local Standard less secured debt payment of $267 on the Saturn Aura).[1] On line 30, Debtors deduct $2,074 as their total average monthly expense actually incurred for all federal state and local taxes that include income taxes, social security taxes and Medicare taxes. On Line 47, Debtors deduct secured debt payments of $267 for the Saturn Aura, $617 for the Portsmouth property, $100 for the John Deere tractor, and $678 for the Downing rental property. Debtors also deduct $314.31 on line 49 for payments on prepetition priority claims and $20.70 on line 50 for Chapter 13 administrative expenses. The claims bar dates have passed. The claims register shows that $18,348.66 in priority unsecured claims have been filed.

In their Amended Plan, Debtors propose a sixty-month plan with payments beginning at $270 per month for twenty-three months and increasing to $605 per month for six months and then $670 per month for thirty-one months, for total plan payments of $34,410. [Doc. # 83, ¶ 1]. The Amended Plan provides that Debtors surrender the Saturn Aura, the John Deere tractor, and the Portsmouth property and that the mortgage on the Downing rental property be paid outside the plan by Debtors and their co-debtors. It indicates that unsecured creditors will be paid a dividend of 4%. [*Id*., ¶ 4(d)(2)].

## LAW AND ANALYSIS

The Trustee objects to Debtor's pending proposed amended Chapter 13 plan, arguing that it fails to meet the projected disposable income test set forth in 11 U.S.C. § 1325(b)(1)(B). While the objecting party has the initial burden to produce evidence in support of an objection, "[debtors have the ultimate burden of proof to show the requirements of 11 U.S.C. § 1325 have been met." *In re Lofty*, 437 B.R. 578, 584 (Bankr. S.D. Ohio 2010); *In re McCarthy*, 376 B.R. 819, 821 (Bankr. N.D. Ohio 2007); *see also Harbin v. Caldwell (In re Caldwell)*, 895 F.2d 1123, 1126 (6th Cir.1990); *Ed Scar & Sons, Inc. v. Francis (In re Francis)*, 273 B.R. 87, 91 (B.A.P. 6th Cir. 2002).

Section 1325(b)(1)(B) provides that if a trustee objects to confirmation of a plan, unless unsecured creditors' claims will be paid in full, the court may not approve the plan unless "as of the effective date of the plan . . . the plan provides that all of the debtor's *projected* disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B) (emphasis added). In determining whether all of a debtor's *projected* disposable income will be applied to make plan

---

[1] In Debtors' originally proposed Chapter 13 plan, they sought to exercise an option to buy the Saturn and pay for the vehicle through the plan. [*See* Doc. # 55]. However, they have surrendered the vehicle and have filed an amended plan.

3

payments to unsecured creditors, the court "begins] by calculating disposable income, and in most cases, nothing more is required." *Hamilton v. Lanning*, – U.S.–, 130 S. Ct. 2464, 2475 (2010). However, the court may go further and "may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." *Id.* at 2478.

"Disposable income" is defined with respect to above-median income debtors, such as Debtors in this case, in § 1325(b)(2) and (3). Those sections provide that "disposable income" means current monthly income ("CMI"), as defined in § 101(10A) and limited in § 1325(b)(2), less amounts reasonably necessary to be expended for the maintenance and support of debtor and debtor's dependents as determined in accordance with the means test set forth in 11 U.S.C. § 707(b)(2)(A) and (B). Official Form B22C facilitates this calculation, *id.* at 2470, n.2, thus yielding monthly disposable income as defined in § 1325(b)(2) and (3).

The Chapter 13 Trustee objects to Debtors' calculation of disposable income on their Form B22C. Specifically, the Trustee objects to Debtors' ownership/lease expense deduction for a second vehicle on line 29, the secured debt deduction for the Saturn Aura that they have surrendered on line 47b, the deductions on lines 47c and 47d for secured debt relating to the Portsmouth property and John Deere tractor, both of which Debtors have surrendered, and the deduction on line 47e for the secured debt payment relating to the Downing rental property. In addition, the Trustee asserts that deductions for payments on prepetition priority claims and Chapter 13 administrative expenses of $314.31 and $20.70, respectively, must be added to Debtors' monthly disposable income on line 59 of Form B22C to arrive at the proper Chapter 13 monthly plan payment.[2]

Debtors assert, among other things, that certain deductions are understated. Specifically, they assert that their line 55 deduction in the amount of $469 for qualified retirement deductions should be $731, the actual monthly amount required to be paid, and that they are entitled to an additional vehicle operation expense deduction of $200 for the car recently purchased by them since it is a ten-year-old vehicle.

## I. Monthly Disposable Income Under the Means Test

### A. Vehicle Ownership/Lease Expense Deduction

Under the means test calculation of disposable income, a debtor is entitled to deduct from CMI the debtor's "applicable monthly expense amounts specified under the National Standards and Local Standards.

---

[2] Although the Trustee also initially objected to a $469 deduction for qualified retirement deductions on line 55 of Debtors' Form B22C, that objection was withdrawn. Debtor explained that this amount is the 60-month average monthly payment amount required for repayment of four 401(k) plan loans.

. . ." 11 U.S.C. § 707(b)(2)(A)(ii)(I). The Local Standards for transportation include both a vehicle operation expense amount and an ownership/lease expense amount. The Trustee asserts that Debtors are entitled only to the operation expense deduction for their second vehicle and not the ownership/lease deduction since they own their second vehicle free and clear of any lien.

In *Ransom v. FIA Card Services, N.A.*, –U.S.–,131 S. Ct. 716 (2011), the United States Supreme Court was asked to determine when an expense amount is "applicable" within the meaning of § 707(b)(2)(A)(ii)(I). The debtor in *Ransom* owned his car outright and, therefore, made no loan or lease payments but still sought to deduct on his means test the Local Standard for ownership expenses for that car. The Court concluded that a deduction is applicable "only if the debtor has costs corresponding to the category covered by the [IRS table of expenses]–that is, only if the debtor will incur that kind of expense during the life of the plan." *Id.* at 724. The Court further concluded that the Local Standard for vehicle ownership expenses "encompasses the costs of a car loan or lease and nothing more." *Id.* at 725. Because the debtor owned his car free and clear of any lien, the Court held that the vehicle ownership expense amount was not "applicable" to him.

Nevertheless, Debtors argue that at the time they completed Form B22C, they had proposed a Chapter 13 plan that included a provision to exercise the lease purchase option relating to the Saturn Aura and make payments over time through their plan. Initially, the court notes that a question arose after objection by the secured creditor as to whether a debtor can force a creditor to finance the purchase of a vehicle through a Chapter 13 plan based merely upon a purchase option provided in the lease. *See In re Ramirez-Arellano,* 113 B.R. 796 (Bankr. S.D. Fla. 1990); *In re Pittman*, 289 B.R. 448 (Bankr. M.D. Fla. 2003). Debtors removed the provision in their Amended Plan and replaced it with a provision that the vehicle would be surrendered. Nevertheless, even if the ownership expense was properly contemplated at the time Debtors' Form B22C was completed, "when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtors' income or expenses that are known or virtually certain *at the time of confirmation." Lanning*, 130 S. Ct. at 2478 (emphasis added)..

In this case, Debtors have surrendered the Saturn Aura and have purchased another car that they own outright. Thus, under *Ransom*, the vehicle ownership expense for that car is not applicable to them and the $229 deduction on line 29 of their Form B22C is improper.

5

**B. Secured Debt Deductions**

Under the means test, debtors are also entitled to deduct from CMI their average monthly payments on secured debt. 11 U.S.C. § 707(b)(2)(A)(iii). The Trustee objects to Debtors' deductions for debt payments secured by property they have surrendered.

In *Darrohn v. Hildebrand (In re Darrohn)*, 615 F.3d 470 (6th Cir. 2010), the Chapter 13 debtors deducted mortgage payments from their CMI while intending to surrender the properties securing the mortgage debt. Applying the holding in *Lanning*, the Sixth Circuit reversed the bankruptcy court decision confirming the debtors' plan, which was based on a projected disposable income that included deductions for the mortgage payments. The court held that "[b]ecause it is undisputed that the [debtors] intended to surrender these properties, 'this represents a change in the [debtors'] expenses that [was] known or virtually certain at the time of confirmation.'" *Id.* at 477 (quoting *Lannning*, 130 S. Ct. at 2474).

In this case, Debtors deduct on their Form B22C debt payments of $267 secured by the Saturn Aura, $617 secured by the Portsmouth property, and $100 secured by the John Deere tractor. All of the collateral securing those debts has been surrendered. Thus, under *Lanning* and *Darrohn*, Debtors are not entitled to deduct those payments from their CMI.

The Trustee also objects to Debtors' deduction for a debt payment of $678 secured by the Downing rental property. Debtors argue that the deduction is proper since Anthony Grabarczyk is jointly and severally liable for the mortgage debt, notwithstanding the fact that two non-debtor parties are also liable. Nevertheless, according to the Trustee, the mortgage debt is already deducted in that Debtors report *net* rental income for the Downing property in calculating their CMI in Part I of Form B22C. The court agrees. Net rental income, by definition, reflects income after expenses, including the mortgage expense. This is consistent with Debtors' Schedule J, which does not include the Downing property mortgage as an expense, and their Schedule I, which states that the Downing property rental income covers their mortgage expense.

With the foregoing adjustments to Debtors' means test calculation, their monthly disposable income on line 59 of Form B22C is $1,672.28. Nevertheless, Debtors argue that because one of their cars is an older model car, they are entitled to an additional $200 vehicle operation expense deduction and that their deduction for 401(k) loan payments is understated by $262. It is not clear to the court whether either of these two arguments are contested by the Trustee. But even assuming that Debtor is entitled to the additional deductions, their monthly disposable income under the means test would be $1,110, far in excess of the monthly payments proposed under their Amended Plan. For this reason alone, Debtors' Amended

Plan does not meet the disposable income test of § 1325(b)(1)(B) and confirmation must be denied.[3]

## II. Deductions for Priority Claim Payments and Chapter 13 Administrative Expenses

The Trustee also asserts that the deductions taken by Debtors on lines 49 and 50 of Form B22C for payments on priority claims and Chapter 13 administrative expenses should be added back into Debtors' monthly disposable income figure calculated on line 59 in determining whether the monthly plan payments proposed in their Amended Plan are sufficient to meet the requirement under § 1325(b)(1)(B) that all of their projected disposable income be applied to make payments to "unsecured creditors." The Trustee's argument requires the court to determine whether payments on priority claims and for Chapter 13 administrative expenses deducted from CMI under the means test constitute payments to "unsecured creditors" within the meaning of § 1325(b)(1)(B). For the reasons that follow, the court agrees that in order to satisfy the disposable income requirement of § 1325(b)(1)(B), Debtors' monthly plan payments must include not only projected disposable income, which is presumptively the line 59 amount, but also the priority claims and Chapter 13 expenses deducted on lines 49 and 50.

The starting point in construing a statute is always the existing statutory text, with the court's function to enforce the statute according to its terms. *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004); *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000). "The court must look beyond the language of the statute, however, when the text is ambiguous or when, although the statute is facially clear, a literal interpretation would lead to internal inconsistencies, an absurd result, or an interpretation inconsistent with the intent of Congress." *Vergos v. Gregg's Enters., Inc.*, 159 F.3d 989, 990 (6th Cir.1998); *see United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242-43 (1989) (stating that in the "'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters' . . . the intention of the drafters, rather than the strict language, controls."). In determining whether the statutory language is clear, the court must take a holistic approach. *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60 (2004). "A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme--because the same terminology is used elsewhere in a context that makes its meaning clear, or because only one of the permissible meanings produces a

---

[3] The court notes that Debtors' gross monthly wages shown on Schedule I are significantly lower than what is reported on Form B22C and their monthly expenses for income taxes and social security shown on Schedules I and J are significantly higher than the tax expense reported on line 30 of Form B22C. While the court may consider changed circumstances in determining *projected* disposable income, these issues were not raised at the confirmation hearing. The court, therefore, will not presume that such circumstances exist.

10-37007-maw    Doc 118    FILED 03/14/12    ENTERED 03/15/12 11:31:32    Page 7 of 10

substantive effect that is compatible with the rest of the law." *Id.*

On its face, the term "unsecured creditors" in § 1325(b)(1)(B) is not ambiguous. An unsecured creditor is simply a creditor that does not have collateral for the debt. *See* 11 U.S.C. § 506(a). The statute does not qualify or distinguish the term. A literal interpretation of the statute would thus permit Debtors to use their disposable income to pay both priority unsecured creditors, the claims for which a deduction has been taken in calculating their disposable income, as well as general unsecured creditors. However, courts that have addressed the application of § 1325(b)(1)(B) under circumstances similar to those presented in this case have persuasively concluded that priority claims and Chapter 13 administrative expenses deducted from CMI on Form B22C cannot be paid from the pot of funds that constitute a debtor's disposable income. *See, e.g. In re Wilbur*, 344 B.R. 650 (Bankr. D. Utah 2006); *In re McDonald*, 361 B.R. 527 (Bankr. D. Mont. 2007); *In re Amato*, 366 B.R. 348 (Bankr. D.N.J. 2007); *In re Echeman*, 378 B.R. 177 (Bankr. S.D. Ohio 2007); *In re Puetz,* 370 B.R. 386 (Bankr. D. Kan. 2007); *In re Williams*, 394 B.R. 550 (Bankr. D. Colo. 2008)*; In re Renteria*, 420 B.R. 526 (Bankr. S.D. Cal. 2009); *In re Johnson*, 408 B.R. 811 (Bankr. W.D. Mo. 2009). Although the analyses in these cases differ somewhat, these courts have generally found that a literal application of the statute would be at odds with the manifest intent of Congress and/or that it would produce an absurd result. This court agrees.

Congressional intent relating to the meaning of "unsecured creditors" as used in § 1325(b)(1)(B) is demonstrated by examining the entire statute. Disposable income, which, under § 1325(b)(1)(B), is to be paid to unsecured creditors, is defined in § 1325(b)(2) as "current monthly income received by the debtor. . . less amounts reasonably necessary to be expended. . . ." For above-median income debtors, as Debtors are in this case, § 1325(b)(3) directs that "amounts reasonably necessary to be expended" be determined in accordance with § 707(b)(2). Among the deductions allowed under 707(b)(2)(A) are deductions for a debtor's payments on prepetition priority unsecured claims and for Chapter 13 administrative expenses. *See* 11 U.S.C. § 707(b)(2)(A)(ii)(III) and (iv). Because this calculation yields the presumptive projected disposable income of the debtor to be applied to payment of unsecured creditors, courts have generally concluded that the only reasonable interpretation of this process is that it is designed to determine the amount available to pay nonpriority unsecured creditors and, thus, that Congress intended the term "unsecured creditors" in § 1325(b)(1)(B) to refer to nonpriority unsecured creditors only. *See, e.g., In re Wilbur*, 344 B.R. at 654 (observing that "the deductions allowed under Form B22C track the considerations that a debtor had to make pre-BAPCPA before paying non-priority unsecured creditors"); *In re Johnson*,

408 B.R. at 816 (concluding that "[t]he plain language of the statute, considered in context, has only one permissible interpretation–the term 'unsecured creditors' refers to only non-priority unsecured creditors"); *In re Renteria*, 420 B.R. at 530 (stating that "given the carveout afforded to Debtors in calculating 'disposable income,'. . . the language of Section 1325(b)(1)(B), when read in context, makes it clear that the resulting projected disposable income is intended to be paid only to nonpriority unsecured creditors").

Further support for this conclusion is found in § 1322(a)(2), which requires that a Chapter 13 plan "provide for the full payment, in deferred cash payments, of all claims entitled to priority. . . ." As one court stated, "[i]f a debtor is required to pay his priority claims in full, it would be illogical, if not contradictory, to read § 1325(b)(1)(B) as permitting a debtor to pay only a portion of his priority claims, provided he devotes all of his disposable income to the plan." *In re Johnson*, 408 B.R. at 815.

Courts addressing the issue in cases where the debtor is an above-median income debtor have also found that an interpretation of § 1325(b)(1)(B) that includes priority creditors in the definition of "unsecured creditors" who must be paid from projected disposable income "obtains an absurd result." *In re Echeman*, 378 B.R. at 181 (citing *In re Wilbur*, 344 B.R. at 654). As explained in *In re Echeman*:

> [I]f a debtor is allowed to deduct priority unsecured claims before reaching the calculation of disposable income and then pay priority unsecured claims out of projected disposable income under § 1325(b)(1)(B), the debtor would in effect be allowed to "double-count" or deduct the same priority claims twice before paying nonpriority unsecured creditors. As noted by the bankruptcy court in *Wilbur*, "[a]llowing the debtor to double-count in this fashion would undermine the purpose and efficacy of § 707(b)(2) and Form B22C ... [t]his would be an absurd result."

*Id.* (internal citations omitted); *accord In re Johnson*, 408 B.R. at 815.

Nevertheless, the § 707(b)(2) expense deductions used in calculating disposable income, which include prepetition priority claims and projected Chapter 13 administrative expenses, only apply to above-median income debtors. In *In re Williams,* the court noted that below-median income debtors calculate their disposable income by subtracting their Schedule J expenses from their CMI and that Schedule J does not include lines for deducting payments to priority unsecured creditors and for Chapter 13 administrative expenses. *In re Williams,* 394 B.R. at 564. Thus, interpreting the term "unsecured creditors" in § 1325(b)(1)(B) to categorically exclude priority unsecured claims would leave below-median income debtors' with no funds to pay those creditors. Addressing this dilemma, in *In re Echeman*, the court suggested that:

9

> [T]o avoid the dueling absurd results of either allowing above-median family income debtors to double-count their priority unsecured claim before paying nonpriority unsecured claims or making below-median family income debtors plans unfeasible because they have no source of income besides "disposable income" from which to pay priority unsecured claims . . . the effective result [should be] the same for all debtors—priority unsecured claims can be counted once, no more, no less, in determining which funds are left for nonpriority unsecured creditors.

*In re Echeman*, 378 B.R. at 182, n.7. Similarly, in *In re Puetz*, the court concluded that it should "logically and, in fact, plainly, read 'unsecured creditors' in § 1325(b)(1)(B) as a catchall phrase to address creditors not specifically referenced elsewhere." *In re Puetz*, 370 B.R. at 392. The court in *In re Williams* agreed and found that interpreting the term "unsecured creditors" in this manner gives meaning to the term without making Chapter 13 unworkable for below-median income debtors. *In re Williams*, 394 B.R. at 564-65.

This court finds the reasoning in these decisions persuasive. It thus finds that the only reasonable interpretation of the term "unsecured creditors," as used in § 1325(b)(1)(B), is one that refers to all unsecured creditors for whose claims the debtor has not included an expense deduction in calculating disposable income. Only if payments on an unsecured creditor's claim are not deducted as an expense in calculating projected disposable income may such claims be paid from projected disposable income.

In this case, Debtors deducted from CMI on Form B22C their monthly payment on prepetition priority claims in the amount of $314.31 and projected average monthly Chapter 13 administrative expenses in the amount of $20.70. Since projected disposable income may not be used to pay these expenses, they must add these amounts to their projected disposable income in determining their Chapter 13 plan payment.

Because the plan payments under Debtors' Amended Plan are insufficient to meet both the disposable income test of § 1325(b)(1)(B) and their priority claim and Chapter 13 administrative expense obligations, confirmation must be denied.

**THEREFORE,** for the foregoing reasons, good cause appearing,

**IT IS ORDERED** that confirmation of Debtors' Amended Chapter 13 Plan [Doc. # 83] be, and hereby is, **DENIED**; and

**IT IS FURTHER ORDERED** that Debtors are granted leave to file another proposed amended Chapter 13 plan and an amended Official Form B22C, if any, on or before **April 9, 2012;** and

**IT IS FURTHER ORDERED** that a further confirmation hearing will be held on **May 8, 2012, at 2:00 o'clock p.m.**